UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

v.                                                    Case No. 2:26-CR-0069-GSL-APR

BASAM FAWZI IBRAHIM,

## OPINION AND ORDER

This matter is before the Court on the Motion for Revocation of Federal Magistrate Judge's Detention Order and for the Setting of Conditions for Release [DE 174] filed by Defendant, Basam Ibrahim, on May 8, 2026. The Government responded [DE 242] on May 25, 2026, and Ibrahim filed his reply [DE 249] on May 30, 2026. A hearing was held on this Motion on June 11, 2026. [DE 266]. For the reasons set forth below, the Court **GRANTS** the Motion.

## BACKGROUND

On April 16, 2026, a federal grand jury returned a twenty-eight count Indictment against James Gerodemos ("J. Gerodemos") and twenty-one other individuals, including Ibrahim, stemming from the alleged operation of an illegal Gambling Organization. [DE 1]. The Indictment charges Ibrahim with the following:

> **Count 1**: Illegal Gambling Business 18 U.S.C. § 1955
> **Count 2**: Conspiracy - Hobbs Act Extortion 18 U.S.C. § 1951
> **Count 3**: Conspiracy - Collection of Extensions of Credit by Extortionate Means 18 U.S.C. § 894
> **Count 4**: Hobbs Act Extortion 18 U.S.C. § 1951
> **Count 5**: Collection of Extensions of Credit by Extortionate Means 18 U.S.C. § 894
> **Count 6**: Conspiracy - Hobbs Act Extortion 18 U.S.C. § 1951
> **Count 7**: Conspiracy - Collection of Extensions of Credit by Extortionate Means 18 U.S.C. § 898
> **Count 8**: Hobbs Act Extortion 18 U.S.C. § 1951

> **Count 9**: Collection of Extensions of Credit by Extortionate Means
> 18 U.S.C. § 894

[DE 1].

Ibrahim was arrested, in relation to the above-described charges, on April 29, 2026. [DE 62]. His initial appearance was held before Magistrate Judge Andrew P. Rodovich (hereinafter referred to as "Judge Rodovich") on the same date. [DE 40]. The Government moved to detain Ibrahim pending trial. [DE 114, 139]. A hearing on the issue of detention was held on May 4, 2026, before Judge Rodovich. [*Id*.].

### A. May 4, 2026 Detention Hearing

The Government argued that pretrial detention was warranted because Ibrahim is both a danger to the community and a flight risk. As to the danger factor, the Government maintained that Ibrahim, who served as "a money runner and strong-arm collector/enforcer for the [] Gambling Organization[,] collected/attempted to collect money from betters/bookies[,] [and] [o]n at least two occasions … threatened/attempted to extort the[] individuals and their family members." [DE 114 at 7]. The evidence supporting the Government's position consisted of phone calls, text messages, and voicemails allegedly left by Ibrahim for Victim 1, a bettor with the Gambling Organization, Victim 1's daughter (hereinafter referred to as "Daughter"), and Victim 1's ex-wife. [*Id*. at 7-17]. The alleged phone calls, voicemails, and text messages tied to Ibrahim occurred in February and March of 2025. [*Id*.]. At the May 4, 2026 Detention Hearing, the Government focused on voicemails allegedly left by Ibrahim on Daughter's phone.

Specifically, on February 20, 2025, the Government claimed Ibrahim left the following voicemail for Daughter:

> Hey [Daughter] this is uh, Sam[1]. [Daughter], if you could please call me
> when you get a chance. 219-2xx-xxx.

---

[1] "Sam" is allegedly an alias used by Ibrahim and another defendant, J. Gerodemos.

2

[DE 114 at 12].

On March 8, 2025, the Government asserted that Ibrahim left the following voicemail for Daughter:

> []I'm looking for your dad [] give me a call I might stop out to see
> you tomorrow … I'll come and see you tomorrow[.]

[DE 114 at 13]; [DE 189 at 2]. The March 8, 2025 voicemail was transcribed and depicted in a screenshot taken from Daughter's phone. [*Id*.].

The Government further alleged that Ibrahim left a voicemail for the daughter the following day, March 9, 2025:

> See you soon sweetheart. See you soon …

[DE 114 at 14]; [DE 189 at 2]. This voicemail was also transcribed and depicted in a screenshot taken from Daughter's phone. [*Id*.]

Counsel for Ibrahim strongly disputed that it was Ibrahim who left the voicemails, but the Government insisted that the voicemails were left by him:

> It's [Ibrahim's] voice on there. The Court wants to listen to them, I'm
> happy to bring those in. If you want the agent to say it's his voice … *It's
> abundantly clear it's his voice. No ifs, ands, or buts … It's not even
> close.*

[DE 221 at 18] (emphasis added). The Government maintained that the calls and voicemails for Daughter, by Ibrahim, "went on for several months … [t]his *wasn't … [a] one-off deal*." [*Id*.] (emphasis added).

In support of its contention that Ibrahim was a flight risk, the Government provided evidence resulting from the search of Ibrahim's residence, including a bank safety deposit box. [DE 114 at 17].  The search revealed three (3) certificates of deposit (CDs), each having a value in excess of $100,000, apparel containing gold coins, and $28,000 in cash located in a safety

deposit box. [*Id*.]. The Government asserted that while Ibrahim's "international travel [wa]s minimal", there was sufficient evidence that Ibrahim was a flight risk. [*Id*. at 22]. Pills were also found in Ibrahim's vehicle and safe, as well as what the Government believed to be a controlled substance, like cocaine, and generic Viagra. [*Id*. at 17-18]. Lastly, a revolver was located in the kitchen. [*Id*. at 18].

### B. Judge Rodovich's Findings:

Both in its written motion [DE 114] and at the hearing, the Government argued that the rebuttable presumption of the Bail Reform Act was applicable because Ibrahim has been charged with a "crime of violence" – Hobbs Act extortion. 18 U.S.C. § 3142(e)(2); [DE 114]. Based on the evidence presented, Judge Rodovich found that the rebuttable presumption did apply:

> [T]he [G]overnment has alleged that under the bond statute, the extortion counts are crimes of violence that entitle them to the presumption [under 18 U.S.C. § 3142(e)(2)]. Most recently, they have cited Section 3142(f)(2)(B) talking about detention based on threats either to witnesses or dangers to the community. Section 3142(f)(2)(B) applies to any crime that a defendant is charged with if I believe that he is a danger to the community or to threaten a witness.
>
> ***
>
> Based on the language of the Indictment and the government's pretrial motion, I will find that the presumption applies in this case based on the conduct of Mr. Ibrahim, in particular, reaching out and the contacts to the daughter of Victim 1.

[DE 221 at 3-4]. Judge Rodovich further concluded that the Government proved both by clear and convincing evidence that Ibrahim was a danger to the community, and by a preponderance of the evidence that he was a flight risk, warranting pretrial detention:

> In considering th[e] factors [listed in 18 U.S.C. § 3142(g)], as well as the other evidence in the case, the government has demonstrated by clear and convincing evidence that Mr. Ibrahim is a danger to the community and that no combination of conditions will assure the safety of anyone in the community, especially the victims in this particular case.

> \*\*\*
>
> [Additionally], considering the resources available to the defendant and the risk of penalties that he faces, the weight of the evidence, I believe the government has demonstrated by a preponderance of the evidence that he also is a flight risk.

[DE 221]. In finding that the Government proved Ibrahim was a danger to the community, Judge Rodovich based his finding largely on the threatening voicemails that Ibrahim allegedly left for Daughter:

> There were contacts with [Victim 1] and [] [D]aughter. And, again, we're talking about a young lady away at school. Involving her, I believe, is unconscionable and shows the mindset of this particular defendant. He was an active participant in all of the threats against Victim 1.

[DE 221 at 21]. Judge Rodovich's reasoning for finding Ibrahim to be a flight risk included:

> Whether I look at the defendant's proposed guideline range of a five-year minimum or the government's proposed guideline range of an eight-year minimum, there is a substantial risk of flight and also pressure put upon him by the weight of the sentence that he is facing.
>
> \*\*\*
>
> The fact that he has $300,000 in certificates of deposit, $28,000 in cash in a safety deposit box, shows that he was a key operative in this particular situation.
>
> \*\*\*
>
> I understand that the probation department has indicated that they believe that he is not a flight risk and that bond is appropriate in this case. I have considered their recommendation, but they did not have access to all of the evidence. Again, considering the resources available to the defendant and the risk of penalties that he faces, the weight of the evidence, I believe the government has demonstrated by a preponderance of the evidence that he also is a flight risk.

[DE 221 at 22-23].

### C. The Government's Supplement to Initial Motion for Detention[2]

Nine days after the hearing, where Judge Rodovich found pretrial detention necessary, the Government filed a Supplement to its Original Detention Motion and Detention Hearing for Basam Ibrahim [DE 189]. In the Supplement, the Government informed the court that they had misattributed, albeit inadvertently, two of the three voicemails left on Daughter's phone to Ibrahim. [DE 189 at 2-3]. Those two voicemails, both transcribed and depicted in screenshots taken from Daughter's phone, were the ones left on March 8, 2025, stating "[]I'm looking for your dad [] give me a call I might stop out to see you tomorrow … I'll come and see you tomorrow …", and on March 9, 2025, stating "See you soon sweetheart. See you soon …" [*Id*.].  The Government now claims that those calls were actually left by defendant J. Gerodemos. [*Id*. at 3].  However, the Government still maintains that the February 20, 2025, voicemail, not depicted in a screenshot, "Hey [Daughter] this is uh, Sam. [Daughter], if you could please call me when you get a chance. 219-2xx-xxx[,]" was left by Ibrahim. [*Id*. at 4-5].

### D. Ibrahim's Written Request for Revocation of Judge Rodovich's Detention Order

Ibrahim filed the instant motion requesting that this Court vacate the detention order entered by Judge Rodovich on May 4, 2026. [DE 174].  He requested that this Court conduct a *de novo* review of Judge Rodovich's order.  [*Id*.]. He also requested that a new hearing be held. [*Id*.].

The Government opposed Ibrahim's request for a new hearing arguing that it was "unusual", and "given the extensive record and rationale for detention as explained by Magistrate Judge Rodovich, no further hearing is necessary." [DE 242 at 3].

Ibrahim, in his reply, supported his request for an entirely new hearing on the basis that the record contains "significant misrepresentations" by the Government upon which Judge Rodovich

---

[2] Ibrahim filed the instant motion [DE 174] on May 8, 2026, but before formally responding, the Government filed a Supplement [DE 189] to its initial Motion for Detention [DE 114].

"was misled to find the weight of the evidence against [Ibrahim] to be extremely strong." [DE 249 at 3] (citing [DE 138 at 22]). The Government, in its written response, reiterated its incorrect representation that the March 8, 2025 and March 9, 2025 voicemails left for Daughter were from Ibrahim. [DE 242 at 6-7]. The Government further stated that Judge Rodovich's detention ruling "was made primarily on only the evidence contained in the Government's original Motion for Detention [DE 114] even without considering the additional evidence of threats and extortion regarding Victim #2." [*Id*.]. The Government further informed the Court that the "white powdery substance" found in Ibrahim's vehicle, initially believed to be a controlled substance was not a controlled substance. [DE 242 at 6].

Based on the significant and material changes in the Government's supporting evidence, this Court found that a new hearing was warranted. [3] [DE 250]; s*ee United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991) (explaining that when reviewing magistrate judge's detention order, pursuant to 18 U.S.C. § 3145(b), the district court may "start from scratch" and *hold a new hearing* or review the record of the proceedings before the magistrate judge) (emphasis added).

**E. June 11, 2026 Detention Hearing**

In support of its request for Ibrahim to be detained pending trial, the Government submitted various exhibits at the hearing consisting of statements by Daughter, Victim 1's ex-wife[4] (hereinafter referred to as "Ex-wife"), as well as Ibrahim's post-arrest statement to law enforcement. [DE 268]. It also relied on its original motion for detention [DE 114] and written response to the instant motion. [DE 242].

---

[3]At the beginning of the June 11, 2026 hearing, this Court explained that "[w]e are here today because this [C]ourt has decided in fact to hold a new hearing." [TR. 3].

[4] Ex-wife is the mother of Daughter.

7

As to the nature and circumstances of the offense element under § 3142(g), the Government focused almost entirely[5] on the alleged contacts Ibrahim had with Victim 1, Daughter, Ex-wife, and an associate of Victim 1, as well as the results of a search warrant conducted at Ibrahim's residence. *See generally* [TR. 16-19]; [DE 114 at 7-16].  The contacts, the Government claims, are supported by toll records, Daughter's statements, and Ibrahim himself. [DE 283 at 17, 21, 28].

On February 17, 2025, at 2:44 p.m., allegedly at the direction of defendant J. Gerodemos, Ibrahim attempted to call Victim 1. [DE 283 at 16]; [DE 114 at 9].  The Government maintains that the call was in regard to an outstanding debt that Victim 1 owed J. Gerodemos, totaling approximately $45,000. [DE 283 at 16]. A couple of minutes later, Ibrahim texted a photo of Victim 1's residence to J. Gerodemos with the phrase "1.8 million". [*Id.*]; [DE 114 at 9].  Then, around 5:43 p.m., Ibrahim attempted to call Victim 1 again. [TR. 17]; [DE 114 at 10]. The Government also alleges that during this timeframe, J. Gerodemos was making phone calls to Victim 1 and he and Ibrahim were making calls to one another. [DE 283 at 16-17]; [DE 114 at 9-10].

The following day, February 18, 2025, the Government claims that multiple defendants, including Ibrahim, attempted to contact Victim 1. [DE 114 at 10]. At 8:14 p.m., Ibrahim attempted to call Victim 1. [DE 114 at 10]. On February 19, 2025, "[J.] Geredemos and Ibrahim attempted to call Victim 1." [*Id.* at 11].  Ibrahim also sent Victim 1 a text message stating:

> Hey buddy, give me a call. I'm supposed to pick up some money from you for Vince[6].

[*Id.*]; [DE 283 at 17]. According to the Government's motion, on February 20, 2025, Ibrahim makes a final attempt to call Victim 1 at 11:54 a.m. [DE 114 at 11].

---

[5] At the hearing, the Government made two passing references about "Victim 2", but nothing substantial enough for the Court to rely on. *See* [DE 283 at 27].

[6] "Vince" is a name commonly used by defendant J. Gerodemos. [DE 283 at 17].

Minutes later, at 12:07 p.m., Ibrahim first attempted contacting Daughter, but got her voicemail. [TR. 18]; [DE 114 at 12]. The voicemail, recovered though a "cloud backup" of Ibrahim's phone, and corroborated by Daughter's statement to law enforcement, showed the following voice message was left for Daughter by Ibrahim:

> Hey [Daughter] this is uh, Sam. [Daughter], if you could please call me when you get a chance. 219-2xx-xxx.

[DE 114 at 12]; [DE 283 at 18, 21]. It should also be noted that Ibrahim admitted in his post-arrest interview that he called "a number provided by [J.] Gerodemos to collect money[,] … [and] [t]h[e] number belonged to [Daughter]." [Exhibit]. At 12:10 p.m., Ibrahim attempted to call an associate of Victim 1. [DE 114 at 12]; [DE 283 at 18]. Several minutes after that, Ibrahim attempted to call Ex-wife. [*Id*]. Finally, on March 5, 2025, Ibrahim texted Victim 1, asking Victim 1 to call him. [DE 114 at 12]. Again, during the course of these contacts, the Government alleges that Ibrahim is in frequent contact with J. Gerodemos. [*Id*.]. In sum, the Government alleges that Ibrahim's contacts were as follows: 7 or 8 attempted calls and one text message to Victim 1, two[7] attempted calls with one voicemail to Daughter, one attempted call to Ex-wife, and one attempted call to Victim 1's associate. [DE 283 at at 22].

In addition to the phone calls and messages, the Government emphasized the results of a search warrant conducted at Ibrahim's property. Specifically, three CDs, worth approximately $100,000 each, articles of apparel with numerous gold coin/braiding enhancements, and $28,000 cash were located in a safety deposit box. [DE 114 at 17]; [DE 283 at 19] A gun and prescription Viagra pills and Cialis, for which no prescription was located, were found in his residence. [DE 114 at 18]; [DE 283 at 19]. In his vehicle, more pills were found along with a substance, now known to be chalk, Ibrahim used when working out. [*Id*].

---

[7] It is unclear to the Court when exactly the second call to Daughter took place. *See* [DE 114 at 11-12].

The Government's briefs include the discussion above, but also describe calls made by Ibrahim to Victim 2 between January 2025 and April 2025. [DE 189 at 24-25]. The content of those conversations are unknown except for an alleged text message sent by Ibrahim to Victim 2 stating:

> [Victim 2] I'm trying to be fair with you. I need you to make payment
> or I will have to pay you a visit.  Let's be gentlemen about this instead.
> I don't like when you keep lying to me.

[DE 189 at 25]. To which Victim 2 responded, "Man I call[*sic*] you back." [*Id.*].

In conclusion, the Government maintained that Judge Rodovich's decision was "clear and unambiguous" and that the record "is clear … [Ibrahim] is both a danger to the community and a flight risk." [*Id.* at 7].

## LEGAL STANDARD

When a defendant is charged with a criminal offense, they may be released on personal recognizance, temporarily detained, or detained. 18 U.S.C. § 3142(a). Detention is appropriate where there is no condition or combination of conditions that will reasonably assure the defendant's appearance in court and the safety of the community. *Id.* § (e)(1). In making a detention determination, the Court looks at the following:

> (1) the nature and circumstances of the offense charged, including whether the offense involved a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the defendant;
> (3) the history and characteristics of the defendant, including
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>     (B) whether, at the time of current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, state, or local law; and

(4) and the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.

*Id.* § 3142(g).

The Bail Reform Act creates several evidentiary presumptions to be employed in certain cases, when determining what (if any) release conditions are appropriate. *United States v. Dominguez*, 783 F.2d 702, 706 (7th Cir. 1986). The Act lists specific offenses that, if certain circumstances are present, carry a presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. *Id.* at § (e)(2)-(3). The presumption shifts the burden of production to the defendant to come forward with some evidence that, if released, he would not flee or endanger the community. *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985). The burden is not heavy, as any evidence favorable to a defendant that comes within a category listed under § 3142(g) will suffice. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). Even if rebutted though, the presumption remains in the case as an evidentiary finding militating against release. *Id.* The government bears the ultimate burden of persuasion, *United States v. Wilks*, 15 F.4th 842, 846-47 (7th Cir. 2021); *Dominguez*, 783 F.2d at 706–07, and must prove danger by clear and convincing evidence and flight of risk by a preponderance of the evidence. *Portes,* 786 F.2d at 764–65.

## DISCUSSION

### A. Standard of Review

The Seventh Circuit explains that, under 18 U.S.C. § 3145(b), district courts have the option to either hold a new hearing on the issue of detention or review the record of the proceedings before the magistrate judge. *See United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991); *United States v. Bruma*, 2025 WL 1036543, at *1 (N.D. Ind. Apr. 8, 2025). If the district court decides to hold a new hearing, its review is considered "*de novo* since it must make an independent

11

determination of the proper pretrial detention or conditions for release." *Bruma*, 2025 WL 1036543, at *1.

## B. The Bail Reform Act's Rebuttable Presumptions

Before determining the issue of detention, the Court must first decide whether the Bail Reform Act's rebuttable presumptions apply. Ibrahim argues that neither mechanism, creating a rebuttable presumption under the Bail Reform Act, are applicable to this case. [DE 249 at 7]; 18 U.S.C. § 3142(e)(2)-(3). The Government, however, takes no position in its Response [DE 242], and the transcript of the hearing reveals nothing other than the Government maintaining its position as stated in its original motion for detention. *See generally* [DE 283 at 6].

Section 3142(e)(2) creates a rebuttable presumption in cases where the offense charged is one listed in § 3142(f)(1) *and* the defendant was previously convicted of a qualifying federal or state offense; the offense was committed while the defendant was on bond pending trial; and no more than five years have passed since the conviction or release from imprisonment for that offense. § 3142(e)(2)(A)-(C). Ibrahim has no prior convictions, therefore the § 3142(e)(2) presumption does not apply here.

Section 3142(e)(3) provides a list, different from those listed in § 3142(f)(1), of certain types of offenses, that if charged, trigger a rebuttable presumption. Again, Ibrahim is not charged with any of those specified offenses, therefore § 3142(e)(3) does not apply either.

Although missing from its response to the instant motion, and underdeveloped at the hearing, the Government, in its initial motion for detention, argued that § 3142(f)(2)(B) entitles it to a rebuttable presumption because Ibrahim has been charged with Hobbs Act extortion, a count which the Government considers to be a crime of violence. [DE 114 at 4]; *see* [DE 221 at 2-3] (explaining "the [G]overnment has alleged that under the bond statute, the extortion counts are

crimes of violence that entitle them to the presumption. Most recently, they have cited § 3142(f)(2)(B) talking about detention based on threats either to witnesses or dangers to the community"). The Government supports its position with the Seventh Circuit's holding in *Wilks*. There, the Seventh Circuit found that the Government was entitled to the presumption because the defendant was charged with conspiracy to distribute methamphetamine, an offense explicitly contemplated as one subject to the presumption under § 3142(e)(3). *Wilks*, 15 F.4th at 845.

The Court is hard pressed to find a link between *Wilks* and the Government's position here that § 3142(f)(2)(B) entitles them to the presumption in this case. First, the plain language of § 3142(f)(2)(B) does not contemplate either available presumption under the Bail Reform Act. *See* 3142(f)(2)(B) [8] . Second, *Wilks* is distinct from this case because the defendant there was charged with a "serious drug crime", explicitly subject to the presumption under § 3142(e)(3). *Wilks*, 15 F.4th at 845; *see also* § 3142(e)(3)(A) (explaining that "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if … there is probable cause to believe that the person committed … an offense … prescribed in the Controlled Substances Act"). For all of these reasons, the Court finds that no rebuttable presumption is applicable here.

## C. § 3142(g) Factors

Because no rebuttable presumption within the Bail Reform Act applies here, the burden is on the Government to show either, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure Ibrahim's appearance in this Court or by clear

---

[8] Section 3142(f)(2)(B) provides that "the judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community … upon motion of the attorney for the Government or upon the judicial officer's own motion in a case, that involves … a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."

and convincing evidence that no condition or combination of conditions reasonably assures the safety of the community. If the Government fails to do so, Ibrahim is entitled to pretrial release.

*Nature and Circumstances of the Offense*

The first factor a court must consider is the nature of the offense that a defendant is charged with committing, including whether the offense is a crime of violence or involves a narcotic drug. *See* 18 U.S.C. § 3142(g)(1). Ibrahim has been charged with several crimes related to the alleged operation of an illegal gambling organization. [DE 1]. While not by definition crimes of violence, or inherently dangerous in nature, some of the charges involve collecting, and conspiracy to collect, extensions of credit by extortionate means.  [DE 1]; 18 U.S.C. § 3142(g)(1). As described below, the acts attributed specifically to Ibrahim, by definition, fall short of constituting a crime of violence.  To the extent that this factor is germane to this case, it militates against detention.

*Weight of the Evidence*

The Government has offered substantial evidence and argument to support several of the charges contained in the Indictment. That evidence consists of Ibrahaim's own admissions, witness statements, and phone records. While understanding that a "pretrial detention decision may incorporate some consideration of the accused's guilt, a pretrial detention decision should not effectively prejudge the merits." *United States v. Lewis*, 2023 WL 4351244, at *1 (7th Cir. 2023). Here, the weight of the evidence is strong and this factor tips in favor of detention.

*History and Characteristics*

This factor requires the Court to assess a defendant's character, physical and mental condition, family ties, employment, financial resources, criminal history, community ties, and more. It also instructs the Court to consider whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other release pending trial. 18 U.S.C. § 3142(g)(3).

14

Ibrahim's history and characteristics are generally unremarkable. The Bond Report states that Ibrahim is 44 years old and has resided in northwest Indiana since birth. [DE 107 at 2].  He is married with four minor children. [*Id*.].  He graduated high school and has been gainfully employed since 2000, making approximately $90,000 per year. [*Id*. at 3]. He has traveled outside of the United States approximately 7-8 times in his life, specifically to Isreal and Palestine. [*Id.* at 2]. Additionally, he is in good mental and physical health with no known alcohol or substance use disorders. [*Id*.].

The Government argues that Ibrahim's history and characteristics support the notion that he is a flight risk. They have relied on the results of the search warrant, namely the $28,000 in "unexplained cash" and CDs. [DE 283 at 28]. The Government claims it would be "preposterous" to believe that these assets were legally obtained. [DE 283 at 5] (explaining that "[i]n my opinion, that's preposterous. There is a lot of unexplained income"). Additionally, while the Government agreed that the risk of flight is "somewhat diminished" by Ibrahim surrendering his passport, it maintains that he could "leave[] this country on foot." [DE 283 at 52].

Moreover, at the time of his arrest, Ibrahim had a pending case out of Porter County, Indiana, for a misdemeanor theft. [DE 107 at 4].  He was arrested and placed on bond for that charge on October 27, 2025. [*Id*.]. His only other charge was in 2012 for misdemeanor conversion which was subsequently dismissed. [*Id*.]. The Government argues that the pending state charge, combined with the CDs, cash, Viagra pills, gold apparel, and revolver recovered from the search of Ibraham's property "says all the court needs to know about the history and characteristics of [Ibrahim]." *See* [DE 114 at 20].  While Ibrahim was on bond for a misdemeanor at the time he was arrested, this charge prompted a pretrial diversion agreement with a dismissal set for December 2026 if no further violations are committed. [DE 283 at 12-13].

Notwithstanding, the relevant inquiry is whether there are any conditions that could reasonably assure Ibrahim's appearance in Court. Notably, there is nothing before the Court, as far as Ibrahim's history and characteristics to indicate that Ibrahim has ever failed to appear in court or has attempted to flee law enforcement. The Government's position that a 44-year-old man who has been working full-time for the last 26 years with $328,000 in savings, poses a significant flight risk is not persuasive. Ibrahim has already surrendered his passport, and his mother, who maintains dual citizenship in Palestine and the United States, and his wife have both volunteered to surrender theirs as well. [TR. At 12]. Based on this, the Court finds that the Government has not met its burden in proving by a preponderance of the evidence that no condition or combination of conditions will assure the Ibrahim's appearance in this Court.

*Nature and Seriousness of the Danger to the Community*

Finally, the Court must consider the nature and seriousness of the danger to any person or the community posed by Ibrahim's release. 18 U.S.C. § 3142(g)(4). The Government argues that the phone calls made to Victim 1, Daughter, Ex-wife, and an associate of Victim 1 show that he is a danger to the community. However, the evidence presently before this Court *is not* the same evidence that was presented to Judge Rodovich. It is reasonable that Judge Rodovich found the voicemails left for Daughter to be threatening, and quite frankly, dangerous. However, it is now known that the only voicemail left for Daughter by Ibrahim was the following:

> Hey [Daughter] this is uh, Sam. [Daughter], if you could please call me
> when you get a chance. 219-2xx-xxx.

[DE 114 at 12]; [DE 283 at 18, 21]. Though this conduct is reprehensible, it is not of the persistent and suggestive nature that was initially represented to Judge Rodovich. Whether Ibrahim is eventually found guilty "is only relevant to the pretrial detention decision [] to the extent that his charged conduct demonstrates that he poses a future risk to the community." *Lewis*, 2023 WL

16

4351244, at *1.  In other words, this Court must not "focus[] exclusively on the danger posed by [Ibrahim's] charged conduct." *Id*. It must also "address[] the important question of whether his release would endanger the community[,]" and further, "whether any condition or combination of conditions … would mitigate the identified risk of danger." *Id*.

The Government provided very little in response to the immediately preceding inquiry. Instead of explaining how any conditions available would be ineffective in mitigating the risk of danger Ibrahim poses, the Government insisted that if Ibrahim has access to a phone, he remains a danger to this community. *See* [DE 283 at 50] (arguing that "This Court is kidding itself if they think they can release [Ibrahim] on bond so he can't pick up the phone and make a call. There is no way on earth that that can happen. People could get him phones. He can get phones."); *see also* [*Id*. at 51] (stating "no conditions of release can effectively, stop him from [contacting witnesses, such as Daughter]").   The Court is not persuaded by this argument, as Ibrahim would have access to a phone if detained. More importantly though, the Government has not convinced the Court that no condition or combination of conditions could mitigate the risk of Ibrahim accessing a phone to contact victims or witnesses.

Finally, the Government argued that the Court should impute the alleged conduct of other defendants to Ibrahim. "We believe they're acting in concert so why shouldn't the [C]ourt consider the conduct of [] Gerodemos when trying to consider the dangerousness of [Ibrahim]." [DE 283 21-22]. That conduct includes the two voicemails, described above, that were incorrectly attributed to Ibrahim initially and are now attributed to J. Gerodemos. [*Id*.]. It also includes the conduct of another co-defendant who allegedly delivered a pizza to Victim 1's residence. [*Id*.]. The Government argues:

> [Ibrahim,] by his own admission in his statement was trying to collect
> this debt, and I believe the statement shows that he knew other people

> were collecting that debt. He said that he knew about [] Gerodemos' gambling organization for 3 to 5 years. And … [Daughter] even says that she was so scared that's why she went to study abroad the one year of college in Australia in 2025 … Just a stranger showing up at your house, at your child's house or your ex-wife or calling them to try and collect a debt that is owed by someone else is frightening in and of itself[.]

[DE 283 at 23].

This case charges more than twenty defendants. Nine defendants, including Ibrahim, are charged with extortion. [DE 1]. Of those nine, the Government agreed to release four of them.[9] To ask the Court to impute the extortionate conduct on Ibrahim but agree to bond for others creates a level of inconsistency that this Court will refrain from engaging in. Under the law, if a condition exists that would mitigate the risk of harm Ibrahim poses to this community, then "pretrial release is required." *Id*.

Based on the foregoing, the Court finds that the Government has not proven by clear and convincing evidence that no condition or combination of conditions will protect the safety of this community. Nor have they proven by a preponderance of the evidence that Ibrahim is a flight risk. The Court finds that there *are* conditions that can be employed to reasonably ensure the safety of this community and Ibrahim's appearance in Court. Accordingly, pretrial release, as provided for in § 3142, is required.

---

[9] Defendants James L. Gerodemos, Chris L. Gerodemos, Basam Ibrahim, Peter Pavlopoulos, Filippo Rovito, Michael D. Campbell, Ehab Mustafa, Alexander G. Gagianas, Rami Mansour, and James Strezovski have been charged with extortion related to the operation of an illegal gambling organization. [DE 1]. The Government did not seek pretrial detention for Filippo Rovito, Michael D. Campbell, Rami Mansour, or James Strezovski. Chris Gerodemos was released on bond after a contested detention hearing before Judge Rodovich. Nowhere in the Government's motion to detain Chris Gerodemos did it request that the Court impute the conduct of other co-defendants onto Chris Gerodemos. *See generally* [DE 78].

## CONCLUSION

The Court hereby **GRANTS** Ibrahim's Motion for Revocation of Federal Magistrate Judge's Detention Order and for the Setting of Conditions for Release [DE 174]. The Court **REFERS** this matter to Judge Rodovich for a hearing on the imposition of conditions for supervised release instanter.

SO ORDERED.

ENTERED: July 9, 2026

/s/ GRETCHEN S. LUND_____
Judge
United States District Court